UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| XY, LLC,<br>22575 State Highway 6 South<br>Navasota, TX  77868<br><br>Plaintiff,<br><br>v.<br><br>TRANS OVA GENETICS, LC,<br><br>Defendant. | Miscellaneous Action No. _____<br><br>(This action currently is pending in the United States District Court for the District of Colorado as Case No. 1:17-CV-00944-WJM-NYW) |

**XY'S MOTION TO COMPEL INTREXON TO COMPLY WITH SUBPOENA**

XY, LLC ("XY") brings this motion to compel Intrexon Corporation ("Intrexon") to comply with a subpoena for documents XY served on June 30, 2017.  Exhibit A, XY's Subpoena to Intrexon ("Subpoena").  Intrexon, the parent company of the defendant in the underlying litigation, does not dispute that it is in possession of relevant documents and information. Nevertheless, Intrexon has refused to fully comply with XY's Document Request Numbers 2, 14, 20, and 21.  The purported basis for Intrexon's refusal to produce responsive documents is an alleged "undue burden" on Intrexon.  But this objection rings hollow for at least two reasons. First, the alleged "burden" is a result of Intrexon's attempt to short-circuit its obligations to identify responsive documents by performing an inadequate "keyword" search that, unsurprisingly, returned numerous documents containing the letters "XY."  A proper search for documents involving Intrexon personnel and custodians most likely to have responsive information would resolve this alleged "burden," and would be more likely to identify responsive documents.  Second, Intrexon, which is represented by the same counsel as the defendant in the

1

underlying litigation, has already committed to producing thirteen categories of documents without the need for a subpoena. Exhibit B, Letter Agreement Between XY and Trans Ova ("Letter Agreement") at 2-3, item 4. The incremental burden on Intrexon, if any, from producing the documents requested in the subpoena is minimal.

In addition, Intrexon is late in producing even those documents it has agreed to provide. The compliance date for the subpoena was July 21, but Intrexon has produced no documents, and has filed no motion to quash or to move the compliance date. In fact, Intrexon is unwilling to commit to completing its document production by August 21—a full month after the compliance date set in the subpoena. Intrexon, which has a history of misleading XY in discovery matters (Exhibit C, D. Colo.'s Order on Intrexon's Mot. to Quash Subpoena at 3 (Dec. 3, 2014) (finding that Intrexon "engaged in abusive litigation tactics in connection with the failure to respond to XY's subpoena")), has left XY in doubt about whether it will ever fully comply with the subpoena, absent an order from the Court. Accordingly, XY brings this motion under Fed. R. Civ. P. 45(d)(2)(B)(i), and requests that the Court order Intrexon to immediately comply with XY's subpoena, including by undertaking more than an insufficient "keyword" search.

## I.   Intrexon Corporation and the Underlying Case

This Motion arises out of a patent infringement case currently pending in the U.S. District Court for the District of Colorado, *XY LLC v. Trans Ova Genetics, L.C.*, CA No. 1:17-cv-00944-WJM-NYW (the "Colorado Lawsuit"). In the Colorado Lawsuit, XY alleges that Trans Ova Genetics infringes seven of XY's patents relating to animal genetics and technology for analyzing and processing reproductive and other cells. Exhibit D, Third Am. Compl. in Colorado Lawsuit. The Colorado Lawsuit is the second patent infringement lawsuit between XY and Trans Ova in the District of Colorado: in a previous lawsuit, Trans Ova was adjudicated to

have infringed ten different XY patents. *See XY LLC v. Trans Ova Genetics, L.C.*, CA No. 13-cv-0876-WJM-NYW ("XY v. TOG I"), Final Judgment, Apr. 19, 2016 (Dkt. 507).

Intrexon Corporation, the subject of the subpoena before this Court, is in possession of documents and information relevant to the Colorado Lawsuit and, while not a named party, is already committed to producing documents in that litigation. Trans Ova is a wholly owned subsidiary of Intrexon, and has been since 2014. Exhibit E, Intrexon's Acquisition Press Release. Intrexon takes an active and controlling role in Trans Ova's business in multiple ways. For example, in XY v. TOG I, Trans Ova represented that Intrexon had "a significant role in formulating Trans Ova's settlement position." Exhibit F, Trans Ova's Mot. to Extend Time in Colorado Lawsuit at 2. In addition, Intrexon consolidates Trans Ova's revenues with its own, rendering numerous Intrexon financial documents relevant to the Colorado Lawsuit. *See* Exhibit G, Excerpts from Intrexon Form 10-K at 3. Indeed, the parties do not dispute that Intrexon—who is represented by the same lawyers representing Trans Ova in the Colorado Lawsuit—is in possession of relevant documents and information. Trans Ova has already agreed to collect from Intrexon and produce 13 different categories of Intrexon documents in the Colorado Lawsuit, without the need for a subpoena. Exhibit B, Letter Agreement at 1-3.

II. **The Court Should Compel Intrexon to Comply with XY's Subpoena**

Intrexon has refused to fully comply with document requests 2, 14, 20, and 21 of XY's subpoena and is late in producing even those documents it has agreed to provide. XY served the subpoena on Intrexon on June 30, 2017, specifying a July 21, 2017 compliance date. *See* Exhibit A, Subpoena at 1. Intrexon timely served Responses and Objections to the subpoena, but failed to specify which documents it was actually withholding based on its objections, if any. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). On the compliance date, Intrexon did not produce any

3

documents or seek to modify the compliance date. Instead, Intrexon served XY with a second set of objections and responses, further obfuscating which documents would be produced, which documents would be withheld, and the rationale for doing so. Exhibit H, Intrexon's July 21 Suppl. Objs. As a result of XY's correspondence and "meet and confer" with Intrexon's counsel, two things became clear. First, as discussed more fully below, Intrexon is refusing to comply with the full scope of requests 2, 14, 20, and 21, despite the fact that those requests call for relevant information and are proportional to the needs of the case. In particular, Intrexon has declined to do anything more than a "keyword search" of electronically stored information and is relying on the numerous hits for "XY" as a basis for refusing to comply with the requests altogether. Second, even as to document requests that are not disputed, Intrexon has barely even begun its document collection efforts, leaving XY with no credible assurances as to when they will be produced. *See* Exhibit I, Intrexon's July 26 Letter to Counsel for XY at 1 ("…we are diligently coordinating collection of Intrexon's documents…").

### A. Intrexon's Refusal to Perform a Reasonable Search for Business Plans and Board Materials Relating to Trans Ova as Called for in Requests 2 and 14

XY's document request numbers 2 and 14 call for Intrexon's business plans that refer or relate to Trans Ova and Intrexon's board minutes and materials discussing XY, XY's parent company, or the first litigation between XY and Trans Ova, respectively. Exhibit A, Subpoena at 7-9, Document Request Nos. 2 and 14. These documents are relevant to the Colorado Lawsuit because they will likely demonstrate, among other things, (a) the importance of Trans Ova's infringing product sales to Intrexon's bottom line, (b) the synergistic value Intrexon has obtained by using the infringing technology from Trans Ova in combination with Intrexon's other reproductive technologies, and (c) Intrexon's plans to compete with XY or its parent company. This information is relevant to the so-called *Georgia-Pacific* factors that are traditionally

4

considered in determining reasonable royalty damages in patent cases. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The information relates to factors such as "the commercial relationship between the licensor and licensee," "the effect of selling the patented specialty in promoting sales of other products," and what royalty Trans Ova and Intrexon would have been willing to agree to "if both had been reasonably and voluntarily trying to reach an agreement." *Id.* It will also be useful in demonstrating to a jury just how large of a role Intrexon plays in Trans Ova's business and identifying Intrexon's interests in the hypothetical negotiation to determine a reasonable royalty. *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1363 n. 3 (Fed. Cir. 2017) (interests of parent and sister companies considered in hypothetical negotiation of a reasonable royalty); *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, No. 5:14-CV-03750-PSG, 2015 WL 5655192, at *3 (N.D. Cal. Sept. 24, 2015) ("[C]onsideration of a related entity is proper in estimating a reasonable royalty.")

Intrexon contends that XY's request for these business plans and Board materials is overbroad and unduly burdensome (*see* Exhibit H, Intrexon's July 21 Suppl. Objs. at 6-7, 19), but the "burden" Intrexon identifies stems from Intrexon's failure to undertake an adequate review for responsive documents. Based on meet and confer discussions between XY's and Intrexon's counsel, Intrexon's document collection efforts are limited to running computer-based keyword searches of electronically stored information. Intrexon points to the number of hits returned from a search for "XY" as evidence of undue burden. *See* Exhibit J, XY's July 27 Letter to Counsel for Intrexon at 1. But a simple keyword search is not a proper, or even a customary, method of responding to a subpoena. Instead, Intrexon should contact personnel likely to have responsive documents and ask them to collect responsive information and identify likely locations of additional responsive documents. This customary method of document

production is not burdensome and, in fact, is more likely to produce relevant documents than Intrexon's insufficient keyword search.

Under a proper search, XY's requests are in proportion to the needs of the case under Fed. R. Civ. P. 26(b)(1) and there is no basis for an "undue burden" objection. XY's requests relate to a discrete set of readily-identifiable documents, and XY has requested production of only a limited subset of them. This is a multi-million dollar case, and as a large company with a nation-wide presence, Intrexon has the resources to comply with XY's document requests. Moreover, the documents XY seeks are unique to Intrexon, and XY cannot obtain them any other way. Importantly, these requests add only a minimal burden—if any burden at all—above and beyond what Intrexon has already voluntarily agreed to search for and provide to XY. In the underlying litigation, Trans Ova agreed to collect, review, and produce similar documents on behalf of Intrexon, covering 13 different categories, and including Board-level materials. Exhibit B, Letter Agreement at 2-3, item 4. The incremental burden of complying with XY's document requests is virtually nothing—Intrexon will be talking to the same custodians and collecting the same documents as in the agreed production, with only minor tweaks to the parameters of the subsequent review.

### B.  Intrexon's Refusal to Produce License Agreements and Royalty Information as Called for in Requests 20 and 21

XY has also requested Intrexon licensing agreements and documents discussing the royalty rates Intrexon pays in the field of animal genetics. Exhibit A, Subpoena at 9, Document Requests 20 and 21. These documents are highly relevant to XY's damages case because they would tend to show the kinds of royalty rates and terms that would be acceptable to businesses similar to Trans Ova's for technologies similarly useful in animal reproduction. Again, this relates to the *Georgia-Pacific* factors, namely the royalty rates Trans Ova would pay "for the use

of other patents comparable to the patents in suit," and the rates arrived at in a hypothetical negotiation between a willing licensor and a willing licensee who are "reasonably and voluntarily trying to reach an agreement." *Georgia-Pacific*, 318 F.Supp. at 1120. These requests are also proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). Again, there are millions of dollars at stake in the underlying litigation and Intrexon has the resources to comply with the subpoena. As Trans Ova's corporate parent, Intrexon's licensing and royalty information is more germane to the hypothetical negotiation analysis than what XY could obtain by subpoenaing some other unrelated company, and Trans Ova's own licensing history is limited. Further, the request for Intrexon's licensing and royalty information is consistent with the scope of the documents Trans Ova voluntarily agreed to produce on Intrexon's behalf. On top of it all, any royalty Trans Ova has to pay will be reflected on Intrexon's balance sheet. In light of these facts, XY's request for Intrexon's licensing and royalty information in the field of animal genetics is plainly proportional to the needs of the case.

Intrexon claims that these requests are too burdensome, but has provided XY with no details to substantiate that burden. Based on the meet and confer between counsel, Intrexon does not currently know how many licenses or other documents are responsive to XY's requests or whether those documents are actually subject to any third party confidentiality obligations.[1] *See* Exhibit A, Subpoena at 1-2. Intrexon's sole solution with regard to XY's requests is to narrow their scope to Intrexon's license agreements and documents discussing royalty rates in the field

---

[1] XY notes that Intrexon waived this third-party confidentiality objection by failing to serve the objection "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). The objections and responses Intrexon served 14 days after the subpoena was served did not include this objection. Exhibit N, Intrexon's July 13 Objs. at 24-26. Intrexon raised it for the first time a week later in its Supplemental Objections and Responses. Exhibit H, Intrexon's July 21 Suppl. Objs. at 27-29.

of sexed semen, of which there are likely none. Exhibit H, Intrexon's July 21 Suppl. Objs. at 27-29. XY's requests are of an appropriate scope, and compliance with the subpoena, as written, is not unduly burdensome.

### C. An Order Compelling Timely Production is Necessary Here

XY attempted to avoid involving the Court in this discovery dispute, but XY is in the unfortunate position of not knowing if, when, and to what extent Intrexon will eventually comply with XY's subpoena. In part, this is because Intrexon keeps moving the goalposts. On July 14, Intrexon represented that it would produce documents on July 21. Exhibit K, Intrexon's July 14 Letter to Counsel for XY at 1. On July 21, instead of documents, XY received an email from Intrexon's counsel indicating that Intrexon would begin producing documents the following week. Exhibit L, Intrexon's July 21 E-mail to Counsel for XY at 1. The goalposts moved again on July 26, with Intrexon's counsel stating that it would "begin producing documents as soon as they are available to us," and stating that Intrexon "cannot commit to completing production before August 21, 2017." Exhibit I, Intrexon's July 26 Letter to Counsel for XY at 1. In short, in the span of less than two weeks, Intrexon went from representing that it would comply with the subpoena to being unwilling even to commit to being a month late in complying.

This is not the first time XY has been the victim of Intrexon's discovery games. In the prior case between XY and Trans Ova, Intrexon and Trans Ova used their corporate identities to play a shell game to avoid producing documents to XY. The Colorado court found that Intrexon and Trans Ova had engaged in "gamesmanship," and threatened sanctions for future abuses. See Exhibit M, Tr. of D. Colo. Hr'g on Disc. at 39:4-7, 40:20-21 (Dec. 3, 2014). In light of this history and Intrexon's current unwillingness to commit to complying with Fed. R. Civ. P. 45, XY is in need of a Court order compelling Intrexon's compliance.

## III. CONCLUSION

For all the foregoing reasons, XY respectfully requests that the Court order Intrexon to immediately comply with the full scope of XY's subpoena, including by engaging in more than an insufficient "keyword" search for relevant documents.

Dated:   August 1, 2017

Respectfully submitted,

/s/ _____
*Attorney for XY, LLC*
David C. Vondle
D.C. Bar No. 978737
dvondle@akingump.com
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC  20036-1564
Telephone:  (202) 887-4000
Fax:  (202) 887-4288

Of Counsel:

Kirt S. O'Neill
Daniel L. Moffett
George Andrew Lever Rosbrook
Akin Gump Strauss Hauer & Feld LLP
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Telephone: 210.281.7000
Facsimile:  210.224.2035

## CERTIFICATE OF SERVICE

The undersigned certifies that XY's Motion to Compel Intrexon to Comply with Subpoena was served on the 1st day of August, 2017 by email and certified mail to:

Donald E. "Tripp" Lake, III
George Matava
Samantha K. Picans
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (303) 861-7760
tripp.lake@lewisbrisbois.com
george.matava@lewisbrisbois.com
Sam.picans@lewisbrisbois.com

*Counsel for Defendant, Trans Ova Genetics, LC and Third-Party, Intrexon Corporation*

Bryan J. Sinclair
Ranjini Acharya
K&L GATES LLP
630 Hansen Way
Palo Alto, CA  94304
Telephone: (650) 798-6749
Facsimile:  (650) 798-6701
bryan.sinclair@klgates.com
ranjuni.acharya@klgates.com

Christine K. Lamb
Fortis Law Partners, LLC
1900 Wazee Street, Suite 300
Denver, CO  80202
Telephone:  (720) 904-6000
Facsimilie:  (303) 295-9701
clamb@fortislawpartners.com

*Counsel for Co-Plaintiff Beckman Coulter in the related District of Colorado litigation*

/s/ _____
David C. Vondle